FILED BY _____ D.C.

05 MAY 18 AM 9:51

ROBERT R. TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

LATISHA JONES,

    Plaintiff,

vs.                                        No. 04-2788-D/V

STATE OF TENNESSEE, et al.,

    Defendants.

---

ORDER CORRECTING THE DOCKET
ORDER ASSESSING $150 FILING FEE
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff Latisha Jones, booking number 03206488,[1] an inmate at the Shelby County Jail (East) ("Jail East") in Memphis,[2] filed a pro se complaint pursuant to 42 U.S.C. § 1983 on September 29, 2004. The Clerk shall record the defendants as the State of Tennessee, Commander Israel, and Shelby County Sheriff Mark Luttrell.

---

[1] In order to facilitate the delivery of mail, the Clerk is ORDERED to correct the docket to include the plaintiff's booking number.

[2] The word "prison" is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 5-20-05

I.   <u>Assessment of Filing Fee</u>

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a).[3] The <u>in forma pauperis</u> statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted both an <u>in forma pauperis</u> affidavit and a trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's

---

[3]   Because the complaint was filed prior to March 7, 2005, the new $250 filing fee is inapplicable.

account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, she is ORDERED to notify the Court immediately of her change of address. If still confined she shall provide the officials at the new prison with a copy of this order.

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the Director of the Jail East to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

## II. Analysis of Plaintiff's Claims

The complaint in this case is unclear, as the plaintiff has not attempted to enumerate each of the claims she seeks to assert but, instead, asserts generally that her rights have been violated since her incarceration at Jail East commenced on September 9, 2003. Moreover, the plaintiff's claims are largely based on purported violations of the Tennessee Constitution and excerpts from the Jail East inmate handbook, rather than the United States Constitution and federal law as is required to state a claim

pursuant to 42 U.S.C. § 1983. The claims specifically enumerated in the complaint are as follows:

First, the plaintiff complains that she requested a list of rules and procedures followed by the staff at Jail East, but her request was denied.

Second, the plaintiff asserts that her legal mail was opened by someone at the prison prior to delivery to her. This occurred on September 3, 2003; on August 18, 2004; and on September 20, 2004.

Third, plaintiff alleges that, on or about July 21, 2004, plaintiff borrowed a bottle of lotion from another inmate named Selena Brackett. A former cellmate of Brackett's told corrections officers that Brackett had hidden money in the lotion bottle. The plaintiff and Brackett were moved to administrative segregation, Brackett was presumably charged with the disciplinary offense of possession of contraband, and the plaintiff was charged with the disciplinary offense of conspiracy even though Brackett told prison officials that plaintiff did not know there was money in the bottle. The plaintiff received thirty (30) days deadlock for this offense. She allegedly wrote letters to various persons, including defendant Israel, but her letters were not answered.

Fourth, on June 8, 2004 plaintiff was moved to F-pod, which houses inmates who are mentally ill, in protective custody, or charged with disciplinary violations. Plaintiff is regularly

5

awakened during the night by noise from other inmates, causing her to feel stressed out and depressed. The lack of sleep is particularly deleterious when she has a scheduled court date.

On August 5, 2004, plaintiff was moved to another cell, which had a bloody mattress, blood on the walls, a dirty toilet, table, and sink, and trash on the floor. Plaintiff asked Officer Harris, who is not a party to this action, to let her clean up the room, but Harris refused. Harris allegedly persisted in her refusal even after Officer Winfree told her to let plaintiff clean the room.

On August 7, 2004, plaintiff allegedly told Sergeant Hubert about the incident involving Harris and stated that she did not want to take her recreation time when Harris was on duty because Harris apparently had a problem with her. Hubert allegedly replied that she would speak to the commander.

On August 11, 2004, Harris allegedly let the plaintiff out for recreation with two inmates who are mentally ill and who had attacked two officers the previous week. When Harris took her break, Sergeant Partee told the plaintiff she was not supposed to be out with those inmates. Plaintiff was told to step into her cell until the other inmates were returned to their cells. Harris allegedly returned after the other inmates were back in their cells, but she did not let the plaintiff out of her cell for another four hours. When the plaintiff was let out, she saw other

6

inmates standing at cell doors talking with inmates who were locked up, so she did the same. Harris told the plaintiff to come away from the door or she would get a write up, the plaintiff replied that other inmates were doing the same thing, Harris replied that she was talking to the plaintiff not the other inmates, and plaintiff threatened to write up Harris for being unfair. The complaint alleges that plaintiff moved away from the cells doors and went into the shower. Nonetheless, she received a write up for disobeying a direct order and cursing at Harris. Three days later, plaintiff says she told the "disciplinary lady" that she had three witnesses who would testify she did not disobey a direct order. It is not clear whether this allegedly statement was uttered during a disciplinary hearing, and it also is not clear whether the plaintiff was convicted of this offense and, if so, whether she appealed her conviction.

On September 8, 2004, plaintiff allegedly observed Harris beat up a mental patient, and she reported this incident to Detective Matthews on September 11, 2004. Thereafter, plaintiff allegedly heard that Harris had said that she was out to get the plaintiff.

Plaintiff also complains that there were no cleaning supplies or soap available on August 8 and 9, 2004.

Fifth, plaintiff complains that, on August 18 or 19, 2004, the "grievance lady" came and spoke to her. Plaintiff

7

allegedly stated that she had written several grievances and she related her problem with Harris. The complaint does not disclose the content of any of those grievances. The grievance officer stated she would respond to the grievances by August 22, 2004. Instead, however, the grievance officer posted rules for inmate grievance procedures on August 20, 2004, and she never thereafter responded to any of the unspecified grievances that were submitted prior to the posting of the rules. The plaintiff complains about the listing of matters not subject to inmate grievances, including "[f]inal formal disciplinary or classification decisions" and "[a]ctions not yet taken." Plaintiff alleges she went to the library on August 8, 2004 to determine whether the new rules were valid, but she was not provided with a copy of the Jail East rules and procedures.

Sixth, plaintiff alleges that, on April 29, 2004, she took two medications that had been prescribed for high blood pressure and depression. Those medications caused her to sleep soundly. Plaintiff was asleep when the officer came to do an armband check, and she was written up for refusing a direct order. When Sergeant Wright, who is not a party to this action, spoke to the plaintiff that evening, plaintiff requested that they check with the medical department to verify that her difficulty waking up was attributable to her medication. Wright allegedly replied that it was the plaintiff's responsibility to get something in writing

8

from the medical department and, if she did so, she would not get a write up if it happened again. The next day the plaintiff was locked down for four hours. Later, the plaintiff got written verification from the medical department.

Seventh, plaintiff complains that she has not been allowed to attend religious services since her housing reassignment on June 8, 2004.

The plaintiff seeks injunctive relief, including the replacement of defendant Israel, and monetary damages.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system). This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims. Knuckles El v.

9

Toombs, 215 F.3d 640, 642 (6th Cir. 2000). To comply with the mandates of 42 U.S.C. § 1997e(a),

> a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Id. at 642; see also Boyd v. Corrections Corp. of Am., 380 F.3d 989, 985-96 (6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison officials fail to respond in a timely manner to a grievance), cert. denied, 125 S. Ct. 1639 (2005); Baxter v. Rose, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege exhaustion adequately may not amend his complaint to avoid a sua sponte dismissal); Curry v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to dismiss for failure to exhaust when plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e) requires the prisoner to exhaust his administrative remedies before filing suit and, therefore, he cannot exhaust these remedies during the pendency of the action. Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999). Finally, the Sixth Circuit recently held that district courts are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that contains any unexhausted

10

claims. <u>Jones Bey v. Johnson</u>, No. 03-2331, slip op. at 4-7 (6th Cir. Apr. 27, 2005).[4]

In this case, the plaintiff submitted a copy of a grievance (Grievance No. 76638) concerning her request for a copy of the Jail East policies and procedures, which is dated August 8, 2004. Nothing on the face of the document indicates it was received by the grievance officials at the plaintiff's prison. As previously noted, <u>see</u> <u>supra</u> p. 8, the complaint did allege that none of the outstanding grievances submitted prior to the posting of the Jail East rules were responded to. Nonetheless, the plaintiff has not specifically alleged that this grievance was properly submitted to the grievance officer. Moreover, the plaintiff did not follow a grievance concerning the direct refusal to give her a copy of the rules and procedures.

The plaintiff submitted another grievance (Grievance No. 75069), dated August 18, 2004, concerning the opening of her legal mail. Nothing on the face of this document indicates that it was received by the appropriate officials at the plaintiff's prison. The complaint alleges that no response was received to that grievance. This allegation is arguably sufficient to exhaust the plaintiff's claim concerning the opening of her legal mail. <u>Boyd</u>, 380 F.3d at 996-97.

---

[4]  This opinion, which will be published in the Federal Reporter, is not yet available on WESTLAW.

11

The plaintiff submitted a copy of a grievance (Grievance No. 75049), dated July 22, 2004, that she allegedly filed concerning her disciplinary write up for conspiracy. The grievance requested that the informer also be punished for conspiracy. The complaint does not allege the outcome of this grievance, and the general allegation that unspecified grievances submitted prior to the posting of the rules were never answered is insufficient to satisfy the plaintiff's burden of demonstrating that the grievance was properly submitted and was never responded to. Moreover, the complaint does not allege that the plaintiff appealed her disciplinary conviction.

Plaintiff also submitted copies of a grievance (Grievance No. 66693), dated August 6, 2004, concerning Harris's refusal to let her clean her dirty cell, and of a grievance (Grievance No. 66689), dated August 7, 2004, about having to take recreation while Harris was the only officer on duty. Nothing on the face of these grievances indicates they were properly submitted to the grievance officer. Plaintiff did not submit grievances concerning the noise on the pod, the failure to let her out of her cell after the mentally ill inmates had been removed, Harris's statement that she was out to get the plaintiff, or the failure to provide cleaning and sanitary supplies.

Finally, the plaintiff submitted a grievance (Grievance No. 75050), dated May 3, 2004, complaining about the fact that

12

counts are sometimes taken in the middle of the night. As the text of the complaint does not assert any such claim, this grievance is irrelevant to this action. Moreover, there is no allegation that the grievance was properly submitted, and the complaint is silent concerning its resolution.

The foregoing discussion indicates that plaintiff has not satisfied her burden of demonstrating that she exhausted her administrative remedies with respect to each of her claims. Apart from the numerous claims where no grievance was filed, and the copies of grievances with no proof they were properly submitted and no allegation concerning their disposition, the complaint contains no indication that the plaintiff exhausted his claims against defendants Israel and Luttrell, the only individual defendants named in this action. Moorer v. Price, 83 Fed. Appx. 770, 772 (6th Cir. Dec. 9, 2003) (plaintiff did not exhaust claim against warden because his grievance did not identify the warden or articulate any claim against her); Thomas v. Woolum, 337 F.3d 720, 733-34 (6th Cir. 2003); Curry, 249 F.3d at 504.[5]

---

[5] Although the complaint also asserts that the plaintiff wrote letters to various persons including Israel, the Sixth Circuit has repeatedly held that an inmate must strictly follow the prison grievance procedures. Shephard v. Wilkinson, 27 Fed. Appx. 526, 527 (6th Cir. Dec. 5, 2001) ("While Shephard asserts that he has raised his complaints in numerous letters to prison and public officials, a prisoner must utilize the formal grievance process provided by the state; he cannot comply with the requirements of § 1997e(a) by informally presenting his claims."); Hewell v. Leroux, 20 Fed. Appx. 375, 377 (6th Cir. Sept. 21, 2001) (same); see also Clark v. Beebe, No. 98-1430, 1999 WL 993979, at *2 (6th Cir. Oct. 21, 1999) (district court erred in holding that prisoner had substantially complied with exhaustion requirement by writing a letter to the U.S. Attorney's office that eventually made its way to the warden of plaintiff's prison). These letters are not, therefore, a substitute for a formal inmate
(continued...)

13

The Sixth Circuit has stated that "[a] plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed sua sponte." Baxter, 305 F.3d at 489.[6] Moreover, pursuant to the recent decision in Jones Bey, a district court must dismiss any complaint that contains unexhausted claims rather than attempting to sever the exhausted claims. Accordingly, the plaintiff's complaint is subject to dismissal, in its entirety, without prejudice, pursuant to 42 U.S.C. § 1997e(a).

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

>  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
>  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Even claims that have not been exhausted may be dismissed on the merits. 42 U.S.C. § 1997e(c)(2). Plaintiff's complaint is subject to dismissal in its entirety.

As a preliminary matter, the complaint contains no factual allegations about defendants State of Tennessee and

---

[5] (...continued)
grievance.

[6] As the Sixth Circuit explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." Id.

14

Luttrell. When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985). Moreover, the complaint does not appear to state a claim against the State of Tennessee, as the plaintiff is in the custody of Shelby County.

Moreover, defendant Israel cannot be held liable on the basis of her position at the Jail East, and defendant Luttrell cannot be held liable on the basis of his position as sheriff of Shelby County. There is no respondeat superior liability under § 1983. Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Instead,

> [t]here must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

Id. (citation omitted).

There is no allegation in the complaint that defendants Israel and Luttrell had any personal involvement in the various incidents described in the complaint. Moreover, the only allegations concerning defendant Israel are that plaintiff wrote letters to her regarding various issues. However, a supervisory official who is aware of the unconstitutional conduct of her

15

subordinates yet fails to act generally cannot be held liable. Nwaebo v. Hawk-Sawyer, 100 Fed. Appx. 367, 369 (6th Cir. Apr. 28, 2004) ("Bivens liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance"); Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); Lillard v. Shelby County Bd. of Educ., 76 F.3d 716, 727-28 (6th Cir. 1996); cf. Doe v. Claiborne County, Tennessee, 103 F.3d 495, 511-12 (6th Cir. 1996) (individual school board members may be held individually liable for the unconstitutional actions of a teacher "only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act"). In this case, the complaint is devoid of allegations that defendants Israel and Luttrell "at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates," Bellamy, 729 F.2d at 421, or that the allegedly unconstitutional conduct described in the complaint was the direct result of either defendant's failure to perform a function he or she was legally obligated to perform, Doe, 103 F.3d at 511-12. Accordingly, even if it is assumed that the plaintiff was subjected to some unconstitutional condition of confinement, defendants Israel and Luttrell are not liable to the plaintiff.

Accordingly, the Court DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and

16

1915A(b)(1), for failure to state a claim on which relief may be granted.

III. <u>Appeal Issues</u>

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision <u>in forma pauperis</u>. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken <u>in forma pauperis</u> if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. <u>Id.</u> Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal <u>in forma pauperis</u>. <u>See</u> <u>Williams v. Kullman</u>, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith and plaintiff may not proceed on appeal <u>in forma pauperis</u>.

17

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[7] In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if she wishes to take advantage of the installment procedures for paying the appellate filing fee, she must comply with the procedures set out in McGore and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal of one of her cases as frivolous or for failure to state a claim.

IT IS SO ORDERED this 17th day of May, 2005.

BERNICE B. DONALD
UNITED STATES DISTRICT JUDGE

---

[7] Effective November 1, 2003, the fee for docketing an appeal is $250. See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

> Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

18

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 3 in case 2:04-CV-02788 was distributed by fax, mail, or direct printing on May 20, 2005 to the parties listed.

---

Latisha Jones
SHELBY COUNTY JAIL
6201 Hailey Road
Memphis, TN 38134

Honorable Bernice Donald
US DISTRICT COURT